UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DESIRAE MARIE STEVES,

          Plaintiff,

     v.                                     **DECISION AND ORDER**
                                                  19-CV-662S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.      Plaintiff Desirae Marie Steves brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      Plaintiff protectively filed her application for benefits under Title II of the Act with the Social Security Administration on June 16, 2015. (R.[1] at 182.) Plaintiff alleged disability beginning on May 15, 2015, due to diabetes, back injury, arthritis, learning disability, high blood pressure, hearing problems, nerve problem in legs, asthma, and thyroid problems. (R. at 204.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Lynette Gohr held a hearing on March 26, 2018, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 38-84.) Vocational Expert Lanell Hall also appeared and testified by telephone. At the time of the hearing, Plaintiff was 38 years old, with an eleventh-grade education, and prior work experience as a nurse's aide and cleaner. (R. at 201, 205.)

---

[1] Citations to the underlying administrative record are designated as "R."

3. The ALJ considered the case de novo and, on May 23, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 16-32.) On March 27, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on May 22, 2019, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7, 12.) Plaintiff filed a response on March 6, 2020 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's May 23, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of May 15, 2015. (R. at 18.) At step two, the ALJ found that Plaintiff has the severe impairments of: right shoulder injury status post arthroscopy, lumbar degenerative disc disease, cervical degenerative disc disease, asthma, learning disability, and borderline intellectual functioning. (Id.) At step three, the

4

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 19.)

11.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work,

> except she could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She further could occasionally balance, stoop, kneel, crouch and crawl. [She] could never reach overhead with the dominant right upper extremity. She must avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, dust, odors, fumes and pulmonary irritants. She could not work in environments with greater than moderate noise… She requires all instruction by demonstration only. She further is limited to performing simple, routine tasks, with no independent decision-making, minimal changes in work routines and processes and no strict production quotas. Finally, [she] requires use of a cane for all ambulation.

(R. at 23-24.)

12.     At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 29.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 30.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between her alleged disability onset date of May 15, 2015, and the date of the ALJ's decision. (R. at 31.)

13.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ failed to give reasons for adopting only part of the opinion of Dr. Kristina Luna; (2) the ALJ failed to develop the record and request missing psychiatric records; (3) the ALJ failed to discuss Plaintiff's interstitial cystitis at step two and beyond; and (4) the ALJ relied on the stale medical opinion of Dr. Samuel Balderman.

5

14.     Plaintiff's medical records present a number of physical issues, including diabetes, asthma, leukocytosis, and thyroid problems. She had a L4-L5 microdiscectomy in 2011 (R. at 464). In the years after this, she reported worsening back pain, in her cervical as well as her lumbar spine. (R. at 518, 525, 464, 527.) She participated in physical therapy for these conditions as long as her insurance covered it; otherwise she treated with ibuprofen. (R. at 517.) Plaintiff also experienced shoulder problems. (R. at 599.) Dr. Samuel Balderman noted that she had abduction of only 100 in her right shoulder, but full range of motion in her left. (R. at 541.) Plaintiff's additionally received a diagnosis of urinary incontinence, and received treatment for interstitial cystitis. (R. at 549, 567.) Although she did not allege this as a disabling condition on her application, the topic arose at her hearing, where she stated that urinary frequency kept her from sitting through an entire television show and where she requested a bathroom break midway through the proceeding. (R. at 66.)

15.     In terms of mental conditions, Plaintiff alleged PTSD due to an abusive situation and due to an episode of necrotizing fascitis (flesh-eating bacteria). (R. at 58.) The record contains notes from an initial counseling session regarding these issues, at which she was diagnosed with adjustment disorder with anxiety and depression. (R. at 695.) Plaintiff's attorney informed the ALJ that she had requested all of Plaintiff's psychiatric records, but experienced considerable difficulty obtaining them. (R. at 41.) The ALJ gave Plaintiff 10 days from the hearing to submit these records; because Plaintiff failed to timely submit the records, the ALJ did not discuss Plaintiff's mental health issues in her opinion.  (R. at 43, 16.)

6

16. Plaintiff also presented evidence of intellectual impairment. In a consultative examination, Dr. Kristina Luna assessed Plaintiff with an IQ of 63. (R. at 396.) She noted that Plaintiff had made many functional adaptations. She opined that Plaintiff had no limitations in following and understanding simple directions and instructions, performing simple tasks independently, maintaining a regular schedule, making appropriate decisions, relating adequately with others, or appropriately dealing with stress. (R. at 398.) Dr. Luna opined that Plaintiff had mild limitations in learning new tasks, and moderate limitations in maintaining attention and concentration and in performing complex tasks independently. (Id.) Dr. Luna further opined that Plaintiff would have difficulty in learning new things, and would "need supervision." (Id.) Dr. Luna recommended vocational training, stating that Plaintiff would "likely need a job coach to walk her through the steps rather than give her information verbally." (R. at 399.) In an addendum dated December 1, 2015, Dr. Luna stated that, although Plaintiff's IQ was in the deficient range, she did not show any deficits in adaptive functioning. (R. at 395.)

17. Plaintiff first argues that the ALJ's failure to include—or explain why she rejected—the limitations assessed by Dr. Kristina Luna was error. Defendant argues the ALJ's RFC is based on substantial evidence despite her failure to explicitly address all of Dr. Luna's statements.

18. "There is no absolute bar to crediting only portions of medical source opinions." Younes v. Colvin, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). But if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Ruling 96–8p (1996). "While the ALJ is not obligated to reconcile explicitly every

7

conflicting shred of medical testimony, [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal citations omitted). Accordingly, when an ALJ adopts only portions of a medical opinion, he or she must explain why the remaining portions were rejected. Labonte v. Berryhill, No. 16-CV-518-FPG, 2017 WL 1546477, at *3 (W.D.N.Y. May 1, 2017) (citing Raymer v. Colvin, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015)).

19.     Here, the ALJ gave Dr. Luna's opinion "significant weight," and adopted her findings regarding most of Plaintiff's mental limitations. (R. at 29.) Yet, the ALJ did not mention Dr. Luna's opinion that Plaintiff "will need supervision. Difficulties are caused by intellectual deficits." (R. at 398.) The ALJ also did not discuss Dr. Luna's assessment that Plaintiff would "likely need a job coach who can walk her through the steps." (R. at 399.) The ALJ was not required to adopt all of Dr. Luna's opinion, but she was required to explain her reasons for adopting part and rejecting part, especially after giving it substantial weight. Labonte, 2017 WL 1546477, at *3. Remand is therefore warranted on this basis.

20.     Plaintiff next argues that the ALJ erred in not obtaining psychiatric records that Plaintiff's attorney was unable to obtain.  Defendant argues that the ALJ was not required to do this, because the record provided sufficient evidence to reach a decision.

21.     Social Security adjudication is not an adversarial process. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits

8

proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citing Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks and brackets omitted)). An ALJ is required to develop a claimant's complete medical history for at least the twelve-month period prior to the filing of his application, as well as gather such information for a longer period, if there is "reason to believe that the information [is] necessary to reach a decision." DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B)).

22. On the other hand, an ALJ is not required to develop the record any further when the evidence already presented is "adequate for [the ALJ] to make a determination as to disability." Janes v. Berryhill, 710 F. App'x 33, 34 (2d Cir. 2018) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). In general, an ALJ does not fulfil her duty by delegating the task of obtaining records to a claimant's attorney, particularly when the attorney attests to her difficulty in obtaining the records. See Sotososa v. Colvin, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016).

23. At the hearing, Plaintiff and her attorney referred to Plaintiff's PTSD and anxiety disorder. (R. at 41, 45.) Plaintiff discussed the traumatic impact of her experience of abuse and with flesh-eating bacteria. (R. at 58). She mentioned taking gabapentin, topiramate, and ziprasidone as prescribed by her psychiatrist, and the medical records reflect this. (R. at 55, 426, 415.)[3] It appears that Plaintiff was receiving psychiatric care for potentially serious mental health conditions.

---

[3] Gabapentin "is used with other medications to prevent and control seizures. It is also used to relieve nerve pain following shingles (a painful rash due to herpes zoster infection) in adults. Gabapentin is known as an anticonvulsant or antiepileptic drug." https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details, accessed 6/15/2020. Topiramate "is used alone or with other medications to prevent and control seizures (epilepsy). This medication is also used to prevent migraine headaches and 3.

24.     The record does not contain evidence of psychiatric treatment beyond Plaintiff's initial assessment. At the hearing, Plaintiff's attorney stated that Plaintiff's mental health care provider had not provided treatment records after multiple requests. (R. at 41.) The ALJ gave Plaintiff ten days to submit the additional mental health records, and then closed the record, apparently based solely on Plaintiff's failure to timely submit these records. (R. at 43, 16.)

25.     Even if Plaintiff's attorney was responsible for Plaintiff's failure to timely submit the records—something that is not clear from the record—the ALJ nevertheless had an obligation to assist Plaintiff if her mental health records would have shed light on Plaintiff's ability to work. From Plaintiff's testimony and her psychiatric prescriptions, there is reason to believe such records were necessary for this determination. Defendant points to evidence in the record showing findings of normal mental status, but the ALJ did not give this as a reason for rejecting Plaintiff's mental health claims, rejecting Plaintiff's mental health claims solely based on failure to submit evidence. (Docket No. 23 at p. 24). On remand, the ALJ should either explain clearly why Plaintiff's mental health records are not necessary in determining Plaintiff's disability or assist Plaintiff in obtaining them.

26.     Plaintiff also argues that the ALJ erred in not considering her impairment of interstitial cystitis and in relying on the "stale" opinion of Dr. Balderman. Because remand

---

decrease how often you get them." https://www.webmd.com/drugs/2-drug-14494-6019/topamax-oral/topiramate-oral/details, accessed 6/15/2020. Ziprasidone "is used to treat certain mental/mood disorders (schizophrenia, bipolar disorder). This medication can decrease hallucinations and help you to think more clearly and positively about yourself, feel less agitated, and take a more active part in everyday life. Ziprasidone belongs to a class of drugs called atypical antipsychotics. It works by helping to restore the balance of certain natural substances in the brain." https://www.webmd.com/drugs/2-drug-20568/ziprasidone-oral/details, accessed 6/15/2020.

is warranted for other reasons, this Court will not consider these arguments here. The ALJ may consider them on remand as she deems appropriate.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for a determination consistent with this opinion.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:      June 16, 2020
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge